496 P.2d 951

Russell LYON et al., Plaintiffs-Respondents,

v.

CASCADE COMMODITIES CORPORATION and Melvin W. Carter, individually and d/b/a Carter Packing Company, Defendants-Appellants.

No. 10955.

Supreme Court of Idaho.
May 12, 1972.

Theodore V. Behm and Edgar R. Frachiseur, Buhl, for plaintiffs-respondents.

McFADDEN, Justice.

The defendants-appellants have appealed from the issuance by the district court of an amended temporary injunction, the effect of which was to restrain the operation of the defendants'-appellants', rendering plant. Respondents moved for a dismissal of the appeal on the ground that this was not an appealable order. This motion is denied. Unity Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P.2d 788 (1961); *see also* Lawrence Warehouse Co. v. Rudio Lumber Co., 89 Idaho 389, 405 P.2d 634 (1965).

This litigation was commenced by the numerous plaintiffs-respondents who by their complaint sought injunctive relief against the operation by the appellants of a rendering plant. This plant allegedly caused obnoxious odors, vapors and stenches to permeate the atmosphere to the point that it interfered with the comfortable and convenient use by the respondents of their residences and homes. By their complaint the respondents sought not only permanent injunctive relief against the operation of appellants' plant in such manner as to cause the dissemination of the odors and stenches, but also sought a preliminary injunction pending the trial of the case. The prayer of the complaint for preliminary injunction was supported by numerous affidavits of the respondents. An order to show cause why the preliminary injunction should not issue was entered, returnable on March 19, 1971.

At the time set for the order to show cause the parties appeared and the appellants by their counsel, stipulated with the respondents' counsel as follows:

"It has been stipulated and agreed between the parties that the defendants are conducting a rendering business at the location complained of and that in the conduct of their business that an offensive odor is created.

Ronald G. Carter, Boise, and Webb, Pike, Burton & Carlson, Twin Falls, for defendants-appellants.

"It is further stipulated that the offensive odor has been offensive to the plaintiffs as per their Complaint.

"It is further stipulated that the offensive odor is a nuisance.

"It is further stipulated that it ought to be abated; that is, that the defendants ought to be required to cease and desist from creating an odor at their business which is offensive to the plaintiffs.

"The only issue to be resolved by the Court is when the order should become effective; that is, should it become effective immediately or should latitude be given to the plaintiff [sic].

"It is further stipulated that the first part of the prayer of the Order to Show Cause, that is, the prayer that the defendant should be restrained from operating the rendering plant, will not be pressed at this time, but that this shall be limited solely to the issue of when the odor ought to be abated."

On the basis of this stipulation the court stated from the bench:

"Very well. Upon that stipulation of fact—I suspect also an admission—the Court would find that the odors which apparently do emanate from the place of business of the defendants do constitute a private nuisance and problem, a public nuisance due to the fact that there are numerous people involved. And as a nuisance, I suspect I do have the authority to abate it and grant at least temporary injunctive relief and I would do so.

"However, as I understand it, the parties wish to discuss or argue or bring to the Court's attention the question of just when the enforcement of this injunction should begin?"

Thereafter the matter was argued to the district court, who then stated:

"An order may be entered in this action restraining the defendants and their employees from committing any acts in the operation of their business which would produce, as apparently it has, odors which would prevent any of the plaintiffs from the comfortable enjoyment of life or property.

"The Order should provide that this Order will be in full force and be effective on Monday, March 29, 1971.

"Inasmuch as the question of whether a nuisance does or does not exist has been resolved by the stipulation, the plaintiffs need not file any bond in order to make the Order enforceable.

"I think the wording should be carefully worked out so that there is no question that the restraining order restrains these people from producing odors, and doesn't restrain them from doing business if they can do business without creating a continuing nuisance."

On March 30, 1971, without entering any findings of fact or conclusions of law, the district court issued for the first time its temporary injunction, wherein the court ordered

" * * * that the defendants and their employees are hereby restrained from committing any acts in the operation of their business which would produce odors that would prevent any plaintiffs from comfortable enjoyment of life or property.

"It is further ORDERED that this Order shall become effective on Monday, March 29, 1971, and shall remain in full force and effect until further Order of this Court.

"Plaintiffs and defendants have stipulated that a nuisance does exist and therefor, it is further ORDERED that plaintiffs are not required to file any bond."

Following the hearing on March 19, the appellants commenced modification of the plant in an effort to contain the offensive odors caused by the processing of the carcasses.

On March 30 the respondents submitted affidavits to the court reciting that the appellants had again commenced operation of

the plant and that offensive and unbearable odors were again emanating from the plant. The court issued its order to show cause directing the appellants to appear before the court on April 12, 1971, to show cause why they should not be held in contempt for violating the order of March 19, apparently having reference to the court's oral statement, and not to the written order issued March 30, 1971.

The order to show cause was continued until April 20, 1971, at which time the district court considered the affidavits of the plaintiffs filed on March 30, and amended affidavits filed April 20, 1971, together with testimony of the parties. At the close of the hearing the district court commented that there was no question but what the respondents had made an effort to control the problem by the installation of various types of equipment in the plant, but that the question remained whether the equipment was effective. The court stated that it found the respondents had been prevented from the peaceable enjoyment of their life and property.

The court then announced that the previous injunctive order was not effective because it was not definite enough, and thereupon amended the injunction to read that appellants cease all rendering activities, including, but not limited to, heating, boiling, cooking any portions or parts of any animals, tallows and fats, and that the appellants cease storage of dead animals. The court provided that the amended injunction would take effect forty-eight hours hence, thus giving the appellants an opportunity to process any animal carcasses that may still have been on the premises. The court required that a $15,000 bond be posted, which was done by the respondents.

The trial court then stated to counsel that upon proper application and showing the court would consider lifting the injunction. Counsel for the appellants requested additional time to rebut evidence introduced with respect to the contempt matter, which request the court granted.

The court signed its "Amended Temporary Injunction," as an amendment to the temporary injunction issued March 30, 1971, and respondents posted the $15,000 bond. The amended order, effective at 2:00 p. m. April 22, 1971, provided

"That the defendants and their employees will cease all rendering activities including but not limited to, heating, boiling and cooking any portion of animals, tallows, or fats; that the defendants cease the storage of any parts or portions of dead animals on the premises of Cascade Commodities Corporation."

By their assignments of error the appellants complain of the court using the order to show cause procedure as the method by which to issue the "Amended Temporary Injunction," contending that they were without notice that the hearing on April 20 might lead to the issuance of another temporary injunction and that it was issued absent the proper pleadings.

The amended temporary injunction by prohibiting the appellants from rendering activities and storage of dead animals on the premises effectively closed the appellants' plant. The March 19, 1971, stipulation of the parties by their counsel provided " * * * that the first part of the prayer of the Order to Show Cause, that is, *the prayer that the defendant should be restrained from operating the rendering plant, will not be pressed at this time, but that this shall be limited solely to the issue of when the odor ought to be abated."* (Emphasis added.)

The district court stated at the time of the hearing on the contempt charge that in his opinion the prior preliminary injunction was not effective, perhaps because it was not definite enough. The trial court, relying on the case of Harris v. Preston-Whitney Irrigation Co., 92 Idaho 398, 443 P.2d 482 (1968) stated that the injunction

should be specific and not in broad terms, and thereupon entered the amended temporary injunction. It is to be noted, however, that Harris v. Preston-Whitney Irrig. Co., *supra*, was a case involving issuance of a permanent injunction, following a full hearing on the merits of the case, which is not the case here. The amended preliminary injunction was so much more restrictive than the preliminary injunction issued on March 30, 1971, pursuant to the facts as stipulated by the parties, that it in effect was a completely new injunction which could not issue without notice to the adverse party. I.R.C.P. 65(a). The trial court erred in this regard.

However, the viability of the original temporary injunction is not affected by this determination, and the issue is still undecided whether appellants are in contempt of that temporary injunction. As previously indicated, the trial court advised appellants that upon proper application and showing the court would consider lifting the injunction. Thus, the appellants would have an opportunity to demonstrate whether the new equipment installed in the plant effectively eliminated the cause of the odors emanating from the plant. The district court has discretion to afford the appellants this opportunity, either upon application to modify the temporary injunction or upon proper showing prior to hearing of the case on its merits.

The appellants have answered the complaint and as far as the record before this Court indicates, the cause is at issue on the merits. Further delay in setting this case for trial on its merits would be unjust to the litigants. On remand to the district court, that court shall set this case for trial at the earliest possible time.

The amended temporary restraining order is vacated and the original temporary restraining order is reinstated and the cause remanded for further proceedings. Costs to appellants.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.